UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STACEY CARGILL<br>c/o her attorneys Tittle & Perlmuter<br>2012 West 25th Street, Ste. 716<br>Cleveland, OH 44113<br>On behalf of herself and all others<br>similarly situated,<br><br>        Plaintiff,<br>  v.<br><br>W. 6 RESTAURANT GROUP, LTD.<br>c/o Statutory Agent Robert George<br>18605 Detroit Avenue<br>Lakewood, OH 44107<br><br>—and—<br><br>ROBERT GEORGE<br>18605 Detroit Avenue<br>Lakewood, OH 44107<br><br>—and—<br><br>COREY MAY<br>18605 Detroit Avenue<br>Lakewood, OH 44107<br><br>—and—<br><br>JOE ORAVEC<br>18605 Detroit Avenue<br>Lakewood, OH 44107<br><br>        Defendants. | CASE NO.:<br><br>JUDGE:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARD ACT** |

Plaintiff Stacey Cargill, through counsel, respectfully files this Class and Collective Action Complaint against Defendants, stating and alleging as follows.

1. This case challenges policies and practices of Defendants that violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, Ohio's Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. § 4111.02, Section 34a of Article II of the Ohio Constitution, and Ohio's overtime compensation statute, Ohio Rev. Code Ann. § 4111.03.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of herself and other "similarly-situated" persons who may join this case pursuant to § 216(b) ("Potential Opt-Ins").

3. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and other members of a class of persons, defined herein, who assert factually-related claims under Ohio wage-and-hour statutes (the "Ohio Class").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's claims under Ohio's wage-and-hour statutes because those claims are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's

claims occurred in this district, one or more of the Defendants reside in this district, and all of the Defendants reside in Ohio.

## PARTIES

7. At all times relevant, Plaintiff Stacey Cargill was a citizen of the United States. She worked for Defendants as a non-exempt, hourly employee from July 2014 through April 2017 at a bar/restaurant called Barley House located at 1261 W. 6th St, Cleveland, OH 44113.

8. Defendants Robert George, Corey May, and Joe Oravec collectively own and operate Barley House – both the Cleveland restaurant at which Ms. Cargill worked and another Barley House restaurant in Akron, Ohio - through Defendant W. 6 Restaurant Group, Ltd.

9. Defendants George, May, Oravec, and W. 6 Restaurant Group collectively control the operations of the Barley House restaurants from their principal place of business located at 1265 West Sixth Street, Cleveland, Ohio.

10. Defendants Defendants George, May, Oravec, and W. 6 Restaurant Group are sometimes collectively referred to as "Defendants."

## FACTUAL ALLEGATIONS

### Defendants' Status as "Employers"

11. At all times relevant, Defendants were "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d), as well as the overtime compensation provisions of Ohio law, Ohio Rev. Code Ann. § 4111.03.

12. W. 6 Restaurant Group, Ltd. was the W-2 employer of Plaintiff.

13. Defendants George, May, and Oravec were "employers" pursuant to 29 U.S.C. § 203(d) in that they were "person[s] [who] act[ed] directly or indirectly in the interest of an employer"—W. 6 Restaurant Group, Ltd.—"in relation to employees," including Plaintiff and the other persons similarly situated.

14. Defendants George, May, and Oravec are the owners and co-founders of both Barley House locations. Upon information and belief, Defendants George, May, and Oravec exercised operational control over significant aspects of the day-to-day functions of their Barley House restaurants, including personnel management, corporate finances, promulgation and institution of company policies, employee supervision, and compensation of employees.

15. Defendants' non-exempt employees included Plaintiff, the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b), and all members of the Ohio Class.

16. At all times relevant, Defendants were joint employers of Plaintiffs, the Potential Opt-Ins, and the Ohio Class Members. Department of Labor regulations provide that employees may work simultaneously for two or more joint employers. 29 C.F.R. § 791.2(a). Joint employment occurs when the two employers are "not completely disassociated" from one another. *Id.* Joint employers are "responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions." *Id.*

4

17. At all times relevant, Defendants were an enterprise within the meaning of 29 U.S.C. § 203(r), and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

18. The two Barley House stores served a common purpose, conducted related activities, shared common ownership and management, shared resources, shared policies and procedures, and shared employees.

### Non-Exempt Employees

19. Plaintiff, the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b), and all members of the Ohio Class are current or former hourly employees of Defendants who worked in one or more of Defendants' Barley House restaurants.

20. Plaintiff, the Potential Opt-Ins, and the Ohio Class Members were at all times non-exempt employees entitled to minimum wages and overtime compensation for all hours worked over forty in a workweek. Plaintiff, the Potential Opt-Ins, and the Ohio Class Members frequently worked more than forty hours in a single workweek.

21. Defendants treated Plaintiff, the Potential Opt-Ins, and all members of the Ohio Class as "tipped employees." Under certain circumstances, both federal and Ohio law permit an employer to take a "tip credit" toward its minimum wage obligation for an employee who regularly received more than $30 per month in tips. However, Defendants utilized a tip credit under circumstances not permitted by law.

22. At all times relevant, Plaintiff, the Potential Opt-Ins, and all members of the Ohio Class were compensated at an hourly rate of $4.08, with any resulting

5

minimum wage deficiency purported to be compensated through customer gratuities under the "tip credit" and "service charge" exemptions of Ohio and federal law.

23. Plaintiff, the Potential Opt-Ins, and all members of the Ohio Class were deprived of legally mandated minimum wages and overtime pay as they were required to pay portions of their earnings to Defendants as part of an illegal tip pooling and/or service charge arrangement.

### Defendants' Unlawful Handling of Gratuities

24. Plaintiff Stacey Cargill worked primarily as a cocktail waitress ("cocktailer") at Defendants' Barley House restaurant in Cleveland. She also moonlighted as a server and a hostess at that establishment.

25. Defendants mandated a 20% automatic gratuity for customers of the cocktailers at Barley House. Patrons also paid voluntary gratuities to that waitstaff.

26. At the end of each work shift, Defendants collected all cocktailers' gratuities – both automatic and voluntary.

27. Out of that pool, Defendants pocketed 3% of total sales for the shift, which they instructed staff was taken to compensate "the house" to cover such items as maintenance, utilities, additional security as needed, etc.

28. Moreover, Defendants distributed 1% of the shift sales to the bartenders, and 1% to bussers.

29. The remaining balance of the gratuity pool, after distributions to the house, bartenders, and bussers, was split evenly among that shift's cocktailers.

30. Any credit card gratuities that were distributed to the cocktailers under this arrangement were treated by Defendants as wages, meaning that Defendants' payroll records reflected that these amounts were paid as compensation to the cocktailers and payroll taxes were withheld.

31. Cash gratuities were also pooled and distributed in the same fashion: 3% of gross sales was retained by Defendants, 1% was distributed to bartenders, 1% was distributed to bussers, and the balance was split among the cocktailers. However, in a likely effort to avoid paying income and payroll taxes on cash gratuities, Defendants did not run those gratuities through payroll.

32. When Plaintiff worked for Defendants as a server, she and her co-servers were subjected to similar policies involving gratuities. All servers were required to pool their tips. Out of that pool, Defendants pocketed 3% of gross sales, 1% went to the bartenders, and 1% to the bussers.

33. Defendants' pay practices satisfied neither the "tip credit" nor "service charge" (or any other) exemptions of federal and state wage-and-hour laws. The practice constituted misappropriation of tips belonging to their employees, deprived employees of minimum wages and overtime pay, and artificially reduced their "regular rate of pay" when overtime pay was due.

34. Defendants knew or showed reckless disregard for whether Plaintiff, the Potential Opt-Ins, and the members of the Ohio Class were being denied proper minimum wages and overtime pay under federal and state law.

35. Upon information and belief, Defendants failed to maintain accurate records of the hours worked and compensation paid to Plaintiff, the Potential Opt-Ins, and the members of the Ohio Class.

## COLLECTIVE ACTION ALLEGATIONS

36. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

37. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

38. The Potential Opt-Ins who are "similarly situated" to Plaintiff with respect to Defendants' FLSA violations consist of:

> All present and former employees of Defendants who worked as cocktailers or servers at Defendants' Barley House restaurants and were subject to tip and/or service charge pooling during the period three years preceding the commencement of this action to the present.

39. Such persons are "similarly situated" with respect to Defendants' FLSA violations in that all were non-exempt employees of Defendant, all were subjected to and injured by Defendants' unlawful practice of appropriating gratuities, resulting in failure to pay minimum wages as well as overtime compensation at the rate of one and one-half times their regular rate for all hours worked in excess of forty hours per workweek. All have the same claims against Defendants for unpaid minimum wages and overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

8

40. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

41. Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that they consist of over 75 persons. Such persons are readily identifiable through the payroll records Defendants have maintained, and were required to maintain, pursuant to the FLSA.

## CLASS ACTION ALLEGATIONS
## (Ohio Class)

42. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

43. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and other members of a class of persons who assert claims under the laws of the State of Ohio (the "Ohio Class"), defined as:

> All present and former employees of Defendants who worked as cocktailers or servers at Defendants' Barley House restaurants and were subject to tip and/or service charge pooling during the period three years preceding the commencement of this action to the present.

44. The Ohio Class is so numerous that joinder of all class members is impracticable. Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that they consist of over 125 persons. The number of class members, as well as their identities, are ascertainable from the payroll records

9

Defendants have maintained, and were required to maintain, pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2; Ohio Const. art. II, § 34a.

45. There are questions of law or fact common to the Ohio Class, including but not limited to:

> Whether Defendants' practice with regard to customer gratuities violated the FLSA and Ohio law?
>
> Whether Defendants kept adequate records of the hours worked by Plaintiff and the other class members?

46. Plaintiff's claims are typical of the claims of other members of the Ohio Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories, as the claims of other class members.

47. Plaintiff will fairly and adequately protect the interests of the Ohio Class. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other class members. Plaintiff's counsel have broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Class in this case.

48. The questions of law or fact that are common to the Ohio Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs,

attorneys' fees, and demands on court resources. Many class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
**(FLSA Minimum Wage and Overtime Violations)**

50. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

51. Plaintiff brings this claim for violation of the FLSA's minimum wage and overtime provisions on behalf of herself and the Potential Opt-Ins. Plaintiff's written consent to becoming a party to this action pursuant to § 216(b) is attached hereto as Exhibit 1.

52. The FLSA required Defendants to pay their non-exempt employees at least the minimum wage, and to pay them overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

53. Defendants failed to pay minimum wages and overtime compensation to Plaintiff and the Potential Opt-Ins, in violation of the FLSA.

54. By engaging in these practices, Defendants willfully violated the FLSA and regulations thereunder that have the force and effect of law.

55. As a result of Defendants' violations of the FLSA, Plaintiff and the Potential Opt-Ins were injured in that they did not receive minimum wages and overtime compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to an award of unpaid minimum wages and overtime compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
### (Ohio Minimum Wage Violations)

56. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

57. The Ohio Fair Minimum Wage Amendment ("OMFWA"), Ohio Constitution art. II, § 34a, required Defendants to pay their employees at least the minimum wage.

58. Defendants failed to pay minimum wages to Plaintiff, the Potential Opt-Ins in Ohio, and the Ohio Class Members, in violation of the OMFWA. The OMFWA entitles them to "equitable and monetary relief" including "two times the amount of the back wages."

## COUNT THREE
### (Ohio Overtime Violations)

59. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

60. At all times relevant, Defendants were employers covered by the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03.

61. The Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, required Defendants to pay overtime compensation at one and one-half times the employees' "regular rate" for all hours worked in excess of forty hours in a workweek. The calculation of the "regular rate" must include "all remunerations for employment paid to, or on behalf of, the employee." Ohio Rev. Code Ann. § 4111.03(A). (incorporating FLSA standards); 29 U.S.C. § 207(e)(3); 29 C.F.R. 778.117 (FLSA requirements incorporated by Ohio Rev. Code Ann. § 4111.03(A)).

62. Defendants violated the Ohio overtime compensation statute, Ohio Rev. Code Ann. § 4111.03, by failing to pay overtime compensation to their employees when due.

63. Defendants' violations of Ohio Rev. Code Ann. § 4111.03 injured Plaintiff, the Potential Opt-Ins in Ohio, and the Ohio Class Members in that they did not receive overtime compensation due to them pursuant to that statute.

64. Ohio Rev. Code Ann. § 4111.10(A) provides that Defendants, having violated § 4111.03, are "liable to the employee[s] affected for the full amount of the overtime wage rate, less any amount actually paid to the employee[s] by the employer, and for costs and reasonable attorney's fees as may be allowed by the court."

## COUNT FOUR
### (Ohio Record-Keeping Violations)

65. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

66. The OMFWA required Defendants to maintain accurate and complete records of employees' time. Ohio Const. art. II, § 34a.

67. Defendants violated the OMFWA's record-keeping requirement by failing to maintain accurate and complete records of employees' time.

68. As a result of Defendants' record-keeping violations, Plaintiff, the potential Opt-Ins in Ohio, and the Ohio Class Members were injured in that Defendants do not have accurate and complete records of their working hours.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the Ohio Class;

C. Enter judgment against Defendants and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Ohio Class;

D. Award compensatory damages to Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Ohio Class in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount;

E. Award Plaintiff their costs and attorneys' fees incurred in

prosecuting this action and such further relief as the Court deems equitable and just.

                Respectfully submitted,

                *s/ Thomas A. Downie*
                Thomas A. Downie (0033119)
                46 Chagrin Falls Plaza #104
                Chagrin Falls, Ohio 44022
                440-973-9000
                tom@chagrinlaw.com

                *s/ Scott D. Perlmuter*
                Scott D. Perlmuter (0082856)
                2012 West 25th Street, Ste. 716
                Cleveland, Ohio 44113
                216-308-1522
                scott@tittlelawfirm.com

                Counsel for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

                *s/ Thomas A. Downie*
                Thomas A. Downie (0033119)